## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL VI

| | | |
|---|---|---|
| ANA LYDIA ORTIZ ORTIZ, MANUEL ELÍAS BLANCO ORTIZ, JOSÉ FRANCISCO BLANCO ORTIZ, ANA MARÍA BLANCO ORTIZ<br><br>Parte Apelante<br><br>v.<br><br>BLANCO & RIERA, INC.<br><br>Parte Apelada | TA2025AP00588 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV07259<br><br>Sala: 1003<br><br>Sobre: Cumplimiento Especifico y Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 15 de diciembre de 2025.

Compareció ante este Tribunal la parte apelante, la Sra. Ana Lydia Ortiz, el Sr. Manuel Elías Blanco Ortiz, el Sr. José Francisco Blanco Ortiz y la Sra. Ana María Blanco Ortiz (en adelante y en conjunto, "Sucesión Blanco Ortiz" o "Apelantes"), mediante recurso de apelación presentado el 24 de noviembre de 2025. Nos solicitó la revocación de la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 24 de octubre de 2025. A través del referido dictamen, el TPI declaró "Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por Blanco & Riera, Inc. (en adelante, Blanco & Riera o "Apelada") y desestimó el caso.

Por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia* apelada.

### I.

El caso de epígrafe se originó el 31 de julio de 2023, con la presentación de una "**Demanda**" por parte de los Apelantes en contra de la Sra. Luscinda Blanco Olalla, el Sr. Elías Luis Blanco Olalla, el Sr. Iván Suárez Olalla, el Sr. Elías D. Blanco Chinni, el Sr. Cristian Blanco Chinni,

el Sr. Emmanuel Blanco Chinni y la corporación Blanco & Riera sobre cumplimiento de contrato y sentencia declaratoria. Mediante la misma, alegaron que, el 18 de noviembre de 2018, suscribieron con Blanco & Riera un acuerdo de compraventa de acciones mediante el cual se comprometieron a venderle todas sus acciones comunes en la corporación por un precio de $170.00 cada una, para un total de $389,640.00. Explicaron que a esa cantidad debía descontarse una deuda de $130,049.00, quedando un balance final de $259,591.00. Resaltaron que dicho acuerdo fue firmado por las partes hacía casi cinco (5) años y que el primer pago debía efectuarse el 15 de diciembre de 2018. Sostuvieron que, pese a los esfuerzos realizados, no habían recibido pago alguno. En vista de lo anterior, le solicitaron al Tribunal que declarara "Ha Lugar" la "**Demanda**", ordenando así el cumplimiento específico de la obligación asumida.

Tras varios trámites procesales, incluyendo la presentación de una "**Moción de Desestimación**" y su correspondiente *Oposición*, el foro de instancia emitió una *Sentencia Parcial* a través de la cual ordenó el archivo, sin perjuicio, del caso en cuanto al Sr. Elías L. Blanco Olalla, la Sra. Luscinda Blanco Olalla, el Sr. Iván Suárez Blanco, el Sr. Elías D. Blanco Chinni, el Sr. Cristian Blanco Chinni y el Sr. Emmanuel Blanco Chinni. Así las cosas, el 1 de mayo de 2024, Blanco & Riera presentó su "**Contestación a Demanda**" en la cual negó la mayoría de las alegaciones expuestas en su contra y resaltó que no había efectuado pago alguno porque, según afirmó, éstos eran improcedentes. También sostuvo que la "**Demanda**" estaba total o parcialmente prescrita, debido a que habían transcurrido más de cuatro (4) años desde el 8 de noviembre de 2018, fecha en que los Apelantes alegan haber firmado el contrato de compraventa de acciones y condonación de deudas. Añadieron que, entre el 9 de marzo de 2019 y el 21 de septiembre de 2021, los propios Apelantes admitieron que aún no habían llegado a un acuerdo ni concretado los términos de sus negociaciones. Por todo lo anterior, le solicitaron al Tribunal que declarara "No Ha Lugar" la "**Demanda**" radicada en su contra.

Posteriormente, el 27 de noviembre de 2024, Blanco & Riera presentó una "**Moción de Sentencia Sumaria**" mediante la cual argumentó que procedía resolver el caso sumariamente, ya que no existían hechos medulares en controversia que lo impedían. En particular, alegó que el contrato en cuestión no era válido ni exigible porque no prestó su consentimiento para el mismo. Señaló que no se llevó a cabo una reunión de su Junta de Directores para aprobar el contrato, ni se emitió resolución corporativa alguna al respecto. En consonancia con dichos planteamientos, le solicitó al TPI que dictara sentencia sumaria declarando nulo dicho contrato y que impusiera el pago de costas, gastos y honorarios de abogado.

En respuesta a lo anterior, los Apelantes presentaron su "**Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria**" (en adelante, "Oposición") en la que alegaron que existían controversias medulares de hechos que impedían la disposición sumaria del caso. Específicamente, sostuvieron que aún existían controversias respecto a los siguientes hechos: (1) si realmente se celebró un acuerdo para la compraventa de las acciones de Blanco & Riera a favor de la Sucesión Blanco Ortiz, (2) si hubo o no una promesa bilateral de compraventa por parte de Blanco & Riera hacia la Sucesión Blanco Ortiz, (3) si el acuerdo suscrito por todos los miembros de la Junta de Directores en su carácter representativo es válido, (4) si Blanco & Riera incumplió con el pago acordado a la Sucesión Blanco Ortiz y (5) si las admisiones hechas por las personas que firmaron el acuerdo en representación de Blanco & Riera obligaban a la corporación a cumplir con lo pactado. A tono con lo anterior, le peticionaron al Tribunal que declarara "No Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada en su contra.

Más adelante, el 28 de marzo de 2025, Blanco & Riera presentó su "**Réplica a Oposición a Moción de Sentencia Sumaria**" (en adelante, la "Réplica") en la que reiteró su postura y expresó que no existía resolución corporativa alguna, ni de la corporación ni de su Junta de Directores, firmada por el secretario o el presidente que evidenciara que la corporación

otorgó su consentimiento al presunto contrato. Argumentó también que no constaba que se hubiera celebrado una reunión de directores para discutir el referido contrato, votar sobre él, aceptar o rechazar sus términos, ni emitir una resolución corporativa que reflejara un consentimiento expreso para obligarse conforme al acuerdo propuesto, el cual implicaría pagar a los Apelantes $389,640.00 por las acciones y condonarles $130,049.00 en deudas.

Añadió que la Sucesión Blanco Ortiz admitió que dicho contrato de compraventa de acciones y condonación de deudas no formaba parte del curso ordinario de los negocios de la corporación. Además, señaló que las comunicaciones entre las partes, esto es, mensajes de texto intercambiados entre el 9 de marzo y el 9 de abril de 2019, demostraban que la corporación aún estaba evaluando el contrato y no había otorgado su consentimiento. En vista de lo antes expuesto, le solicitó nuevamente al TPI que dispusiera del caso por la vía sumaria.

En reacción a lo anterior, los Apelantes presentaron su "**Dúplica a Réplica Oposición a Moción de Sentencia Sumaria**" (en adelante, "Dúplica") mediante la cual argumentaron que Blanco & Riera no rebatió los hechos adicionales que expusieron en su *Oposición.* También plantearon que los hechos no disputados evidenciaban que Blanco & Riera consintió la compraventa de las acciones pertenecientes a la Sucesión Blanco Ortiz, lo cual impedía que se dictara sentencia sumaria. Indicaron que, tras diversas negociaciones entre el Sr. Manuel Elías Blanco Ortiz y los representantes de la corporación, ambas partes llegaron a un acuerdo que quedó recogido por escrito y que acordaron incorporar al contrato final. Por ello, le solicitaron al foro de instancia que declare "Sin Lugar" la "**Moción de Sentencia Sumaria**".

En este contexto, el 7 de julio de 2025, el TPI emitió una *Resolución* en la cual declaró "No Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por Blanco & Riera. En su determinación, el foro apelado concluyó que aún existían controversias genuinas sobre lo siguiente: (1) si se cumplió o no con el requisito de unanimidad exigido por la Ley Núm.

164-2009, según enmendada, mejor conocida como la "Ley General de Corporaciones", al firmarse el acuerdo de compraventa de acciones, (2) si Blanco & Riera otorgó o no su consentimiento al firmar dicho acuerdo y (3) en caso de haberse perfeccionado el contrato, si Blanco & Riera incumplió o no con el pago pactado.

Inconforme con esta decisión, el 22 de julio de 2025, Blanco & Riera presentó una moción intitulada "**Moción de Reconsideración y Enmiendas y Determinaciones Adicionales, (Reglas 42 y 43), y Determinaciones de Hechos Incontrovertidos y de Aquellos que están Realmente y de Buena Fe en Controversia Bajo la Regla 36.4 de Procedimiento Civil"**. Mediante la misma, alegó que en el presente caso no aplicaba la excepción de consentimiento corporativo derivada de la firma de todos los directores. Añadió que los documentos relevantes fueron producidos en formato legible y transmitidos por correo electrónico o mensajes de texto sin necesidad de encriptación. También sostuvo que no se obtuvo el consentimiento corporativo requerido ni se perfeccionó causa o pago alguno. Destacó, además, que el intercambio de documentos, borradores y firmas en diciembre de 2018 reflejaba negociaciones activas, con términos y condiciones que nunca fueron finalizados ni concluidos. Así pues, le solicitó al foro apelado que reconsiderara su *Resolución*, emitiera las enmiendas y determinaciones pertinentes y declarara "Ha Lugar" la "**Moción de Sentencia Sumaria**".

Ese mismo día, los Apelantes también presentaron una "**Moción de Reconsideración**", a través de la cual afirmaron que sí se cumplió con el requisito de unanimidad establecido en el Artículo 4.01(E) de la Ley General de Corporaciones, *supra*, pues el acuerdo contenía la firma de todos los miembros de la Junta de Directores. También arguyeron que el precitado estatuto exige el consentimiento escrito o electrónico de todos los directores, requisito que, según ellos, quedó acreditado. Alegaron que la firma del acuerdo por todos los directores equivalía al consentimiento unánime de la corporación. Finalmente, sostuvieron que, perfeccionado el

consentimiento corporativo, la falta del primer pago conforme al acuerdo constituía un incumplimiento contractual.

Así las cosas, y tras la solicitud de la misma, el 22 de septiembre de 2025 se llevó a cabo una vista argumentativa. Luego de considerar los planteamientos de ambas partes, el 24 de octubre de 2025, el TPI emitió una *Sentencia* en la que declaró "Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por Blanco & Riera.

Inconforme con lo anteriormente resuelto, los Apelantes acudieron ante este Tribunal mediante el recurso de epígrafe, en el que señalaron los siguientes errores:

> **PRIMER ERROR**: Erró el TPI al desestimar sumariamente la Demanda, a pesar de que existen controversias sustanciales de hecho que requieren la celebración de un juicio plenario.
>
> **SEGUNDO ERROR**: Erró el TPI al privar los Apelantes de su derecho a un juicio plenario, al desestimar sumariamente por hechos que no fueron incluidos en la Solicitud de Sentencia Sumaria, carentes de prueba y del cual los Apelantes no pudieron presentar prueba para controvertir.
>
> **TERCER ERROR**: Erró el TPI al desestimar sumariamente la Demanda y concluir que los Apelantes habían hecho una contraoferta que no fue aceptada por B&R, sin haber tenido ante sí tal prueba y sin contar con la prueba testifical para sustentar dicha determinación.

El 12 de diciembre de 2025, Blanco & Riera presentó su "**Oposición a Escrito de Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". Batista Valentín v. Sucn. Batista Valentín, 216 DPR ___; 2025 TSPR 93. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay

controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3; Negrón Castro y otros v. Soler Bernardini y otros, 216 DPR ____ (2025); 2025 TSPR 96.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808

(2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados,

en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos,

de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**[1]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto

---

[1] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1812 del Código Civil de 2020 dispone que: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil de 1930, 31 LPRA sec. 3451.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio, siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995).

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

**III.**

En el presente caso, los Apelantes nos solicitaron la revocación de la *Sentencia* del TPI en la que se declaró "Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por Blanco & Riera.

Los tres señalamientos de error esgrimidos están íntimamente relacionados, por lo que se tratarán de forma conjunta en la discusión. En síntesis, la Sucesión Blanco Ortiz sostiene que el TPI erró al: (1) desestimar sumariamente la "**Demanda**", a pesar de que existen controversias sustanciales de hechos que requieren la celebración de un juicio plenario; (2) utilizar hechos que no fueron incluidos en la "**Moción de Sentencia**

**Sumaria**" y (3) al concluir que los Apelantes habían hecho una contraoferta que no fue aceptada por Blanco & Riera, sin haber tenido ante sí tal prueba. Veamos.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Del análisis de la prueba que se presentó ante el TPI y de la que se desprende de los autos de instancia, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1. Blanco & Riera es una corporación autorizada a hacer negocios en Puerto Rico que goza de personalidad jurídica.
2. Las negociaciones entre la Sucesión Blanco Ortiz y la corporación Blanco & Riera relativas a la adquisición de las acciones pertenecientes a la referida sucesión se iniciaron en el año 2018.
3. El Sr. Manuel Elías Blanco Ortiz elaboró un documento relacionado con la compraventa de dichas acciones, el cual habría de incorporarse al contrato final.
4. Este documento fue suscrito por los miembros de la corporación Blanco & Riera y por los integrantes de la Sucesión Blanco Ortiz.
5. El 11 de diciembre de 2018, el Sr. Manuel Elías Blanco Ortiz remitió a la corporación el documento firmado por los miembros de la sucesión e indicó que se encontraba en espera del borrador del contrato para proceder con su revisión.
6. Las comunicaciones intercambiadas entre marzo y abril de 2019 evidencian que, para esas fechas, el contrato de compraventa aún no había sido suscrito.
7. Las partes nunca formalizaron ni ejecutaron un contrato de compraventa respecto a las acciones objeto de negociación.

Establecido lo anterior, nos dirigimos a analizar los señalamientos de error esgrimidos. En resumidas cuentas, los Apelantes alegan que no existe controversia respecto a que Blanco & Riera remitió por correo electrónico un acuerdo firmado por todos los miembros de su Junta de Directores, que dicho acuerdo fue devuelto firmado por la Sucesión Blanco Ortiz el 11 de diciembre de 2018 y que el consentimiento de Blanco & Riera no ha sido cuestionado. Sostienen, además, que persisten asuntos de credibilidad que requieren adjudicación en un juicio plenario.

Conforme reseñáramos en los acápites anteriores, en nuestro ordenamiento jurídico procede dictar sentencia sumaria si conforme a la

evidencia presentada, no existe controversia real y sustancial en cuanto a hechos esenciales y pertinentes del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Tras analizar detenida y comprensivamente los documentos que obran en el expediente, incluyendo la "**Demanda**", la "**Moción de Sentencia Sumaria**", su correspondiente *Oposición*, la *Réplica* y la *Dúplica*, hemos arribado a la conclusión de que el TPI actuó correctamente al disponer del caso por la vía sumaria. Nos explicamos.

De entrada, es indispensable destacar que las partes nunca llegaron a suscribir un contrato de compraventa de acciones de la corporación Blanco & Riera. Lo único que fue firmado el 8 de noviembre de 2018 consistió en un documento preliminar, el cual, según admitido por el Sr. Manuel Elías Blanco Ortiz en la declaración jurada presentada por los propios Apelantes, fue redactado como un documento preparatorio que habría de incorporarse posteriormente como un anejo del contrato final. Esta admisión es especialmente significativa, ya que proviene de uno de los miembros de la Sucesión Blanco Ortiz, quien es la parte promovente de pleito que no ocupa, y confirma que el documento al amparo del cual se solicitó el cumplimiento contractual por parte de Blanco & Riera no constituía el acuerdo final. Esto, sin duda, conduce a la inequívoca conclusión de que entre las partes nunca se perfeccionó el presunto contrato que se alega en la "**Demanda**" en el cual se perfeccionó la venta de acciones y condonación de deuda entre las partes.

Para propósitos de claridad, al examinar las expresiones consignadas por el Sr. Manuel Elías Blanco Ortiz en la declaración jurada que presentaron como anejo a la *Oposición* se desprende lo siguiente:

[…]

5. A solicitud de Iván [Suárez Blanco], preparé un documento en donde comprometía tanto a los demandantes y a la Demandada, a la compraventa de las acciones de la Scn. Blanco. **Según lo acordaron las partes, <u>dicho documento,</u> se incluiría en el contrato final de compraventa**.

6. Como resultado de tales negociaciones, el 8 de noviembre de 2018, los codemandantes y la Demanda otorgaron un Acuerdo de Compraventa de Acciones de Blanco & Riera Inc.

7. Mediante dicho Acuerdo los Demandados prometieron vender a la Demandada todas sus acciones comunes en la Corporación, a precio de $170.00 por acción, por la cantidad total de $o389,640.00. **Anejo 2. Acuerdo de Compraventa**.

8. A la cantidad total de $389,640.00, se le restaría una deuda de $130,049.00, para un balance total de $259,591.00. O sea que, el acuerdo consistía en una venta de acciones de la parte Demandante a la parte Demandada luego de descontar la deuda para un balance total de $259,591.00. **Anejo 2. Acuerdo de Compraventa**.

9. El viernes, 7 de diciembre de 2018, Elías me envió un correo electrónico indicando que adjuntaba el acuerdo firmado por las partes representando a B&R, y solicitaron devolvieran el documento debidamente firmado por los miembros de la sucesión. **Anejo 3. Correo electrónico de Elías Blanco a Manuel Blanco**.

10. Para el **<u>13 de diciembre de 2018</u>**, Elías me remitió otro correo electrónico solicitando la información faltante **<u>para incorporarla a lo que sería el contrato de compraventa</u>**. **Anejo 4. Correo electrónico de Elías Blanco a Manuel Blanco**.[2]

Una lectura comprensiva de dicha declaración jurada conduce a la conclusión de que el presunto acuerdo que las partes suscribieron el 8 de noviembre de 2018 no era un contrato de venta de acciones como lo alegó la Sucesión Blanco Ortiz en la "**Demanda**". Es norma conocida en nuestra jurisdicción que "el nombre no hace la cosa". <u>PR Fast Ferries, LLC v. APP</u>, 213 DPR 103, 114 (2023). Así que, por más que la Sucesión Blanco Ortiz quiera argumentar que el referido Anejo 2 de la Declaración Jurada era un "contrato", la realidad es que las expresiones que se consignaron en la misma apuntan a todo lo contrario. Dicho documento no era más que un documento preparativo que serviría para la redacción de un acuerdo que

---

[2] *Véase*, <u>SUMAC TPI</u>, Entrada Núm. 72, **Anejo A** de la "**Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria**", págs. 1 y 2 (énfasis en el original y suplido).

nunca se concretó y/o que formaría parte del mismo. **Tan es así que el propio Sr. Manuel Elías Blanco Ortiz, integrante de la Sucesión Blanco Ortiz, expresó más de un (1) mes después de que se firmara dicho documento preliminar, que el Sr. Elías Blanco le solicitó información adicional para proceder a redactar lo que sería el contrato de compraventa de acciones**.

Entonces, ante unas admisiones tan contundentes como las expuestas en la Declaración Jurada que se presentó junto con la *Oposición*, no nos cabe duda de que el documento que los Apelantes quieren utilizar para hacer cumplir la presunta obligación contractual no fue un contrato de compraventa de acciones y que más bien, según las eventos anteriores y concomitantes al contrato, lo que constituyó el mismo fue un documento complementario de lo que en su día sería el contrato de compraventa de acciones.

A lo anterior se le abona el hecho de que constan en autos comunicaciones intercambiadas entre **marzo y abril de 2019** entre las partes que demuestran que el contrato de compraventa aún no había sido redactado, remitido ni suscrito, y que las negociaciones permanecían abiertas. La autenticidad de dichas comunicaciones fue admitida mediante la "**Contestación al Requerimiento de Admisiones**" de la Sucesión Blanco Ortiz presentado por Blanco & Riera, lo que les otorga validez probatoria y demuestra que, para ese periodo, no existía un contrato perfeccionado.

Así pues, cuando se analizan de manera integrada los siguientes aspectos: (1) la admisión de la propia Sucesión Blanco Ortiz de que el documento firmado sería anejado al contrato final y (2) las comunicaciones habidas entre las partes que evidencian que nunca se redactó ni suscribió el contrato definitivo, la conclusión es clara e inequívoca: el contrato objeto de la presente controversia nunca llegó a existir. Al no haberse perfeccionado un contrato, no existe obligación exigible y, en consecuencia, no puede sostenerse causa de acción alguna. Por tanto,

somos del criterio que, bajo estas circunstancias particulares, disponer del caso por la vía sumaria fue la determinación jurídicamente correcta.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *confirmamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones